UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

ANAKAREN LOPEZ as person
representative of SALOMON
RODRIGUEZ,

                                    Plaintiff,

v.

UNITED STATES OF AMERICA *et al.*,

                                    Defendants.

Case No.:  15-CV-180-JAH(WVG)

**ORDER CONFIRMING COURT'S
PRIOR DENIAL OF PLAINTIFF'S
REQUEST TO COMPEL SECOND
VESSEL INSPECTION**

    In this discovery dispute over whether a second site inspection of an elevator platform aboard a United States Navy warship should be ordered, the Court considers a new argument raised on objection to the Court's prior Order.  A telephonic discovery conference was held on March 16, 2017, and the parties presented their respective positions.  The Court finds Plaintiff's new argument for a second inspection not persuasive and confirms its prior ruling denying the inspection.

/ / /

/ / /

/ / /

/ / /

# I.   BACKGROUND

The factual and procedural background of this case were set forth in the Court's prior Order and will not be repeated here in detail.  Nor will the Court rehash prior arguments made for or against the second inspection, as those arguments are presently before the Honorable John A. Houston on objection.  Briefly, however, this case is about a very unfortunate workplace incident where the decedent fell to his death when he stepped off of an elevator platform and fell through a gap at the end of the platform while working as a contractor on the USS Boxer.  At the time, the gap was obscured by milky-white plastic sheeting that surrounded the platform as a make-shift wall.  Plaintiff alleges Defendants' negligence caused this unfortunate event.[1]

When Plaintiff objected to the Court's denial of her request for a second inspection, she presented a new argument in favor of the inspection, and Judge Houston remanded the matter to the undersigned to consider the new argument.

## A.   Plaintiff's New Argument

An aft door ramp lowers to cover a gap between the subject weapons elevator and the ship's body when the elevator is in the raised position at the flight deck level of the USS Boxer.  Plaintiff's counsel has not seen this ramp in person.  He does not know its dimensions nor does he know the ramp's geometric shape.  He mentioned numerous times that he does not know how much of the gap is covered by the ramp.  He does not know how far down the ramp lowers and whether it touches the elevator platform.  He is unable to ascertain all of this information using the photographs and technical documents and diagrams produced by the United States in discovery.  And he can't determine how the accident happened by reconstructing the scene from another location.

---

[1] Defendants are United States and National Steel & Shipbuilding Company (NASSCO). For purposes of this Order, however, only Defendant United States is the interested party as it, not NASSCO, controls access to the USS Boxer.

Counsel argued he has an "absolute right to go up there, lower that aft ramp, measure it,[2] photograph it, and make some kind of a logical determination as to whether it would have prevented the accident or not." Later, counsel reiterated: "I have every right in the world to see the spot where this guy fell and make some kind of logical determination as to whether that aft ramp, had it had been lowered, would've prevented the accident and there's no way I can do that without looking at it and photographing it and measuring it myself." Counsel argued he is litigating completely in the dark when it comes to the aft ramp at issue.

**B.    Defendant United States of America's Counter-Argument**

Defense counsel began by stating Plaintiff was "being disingenuous" about litigating completely in the dark because he is unable to interpret the photographs and technical blueprints produced in discovery. According to the United States, Plaintiff has retained an expert witness who personally designed ship elevators for the Navy at "NAVSEA"—or Naval Systems Command.[3] That expert, presuming he or she is qualified, easily should be able to interpret the numerous photographs and design schematics[4] and then provide Plaintiff with answers to her counsel's questions.

---

[2] Counsel later stated that the inspection could be done from the flight deck itself without anyone entering the elevator or touching anything. However, it is unclear how the ramp could be accurately measured from such a distance.

[3] Per NAVSEA's website, its "engineers, builds, buys and maintains the Navy's ships and submarines and their combat systems." About NAVSEA, http://www.navsea.navy.mil/Who-We-Are/ (last visited March 17, 2017).

[4] To date, Plaintiff's counsel has never questioned the accuracy of any of the photographs or design schematics. He simply contends *he* cannot interpret them. Maybe *he* can't but the Court presumes this is why Plaintiff has retained an expert—to assist her and counsel in understanding the technical aspects of the ship's elevator platform, aft ramp, and other related matters. Plaintiff's counsel has not explained why his expert witnesses cannot offer this valuable and critical assistance.

With respect to Plaintiff's counsel's concerns regarding the size and shape of the ramp and how much of the gap the ramp covers, defense counsel definitively represented that the ramp covers the gap in its entirety.  This is because forklifts carrying live munitions travel over the ramp and would not do so if gaps existed.

With respect to the purported need to reconstruct the accident to determine how it happened, counsel added:  "We know how the guy fell.  He walked through the plastic.  He didn't know there was [unintelligible] behind the plastic.  He backed into it and fell through the hole.  The hole was there because the ramp was up."  Counsel then added: "He [Plaintiff's counsel] has everything he needs [unintelligible] his expert, who worked at NAVSEA, who designed elevators on warships to determine what happened and how it happened.  You don't need an expert to tell you the accident happened because for whatever reason the ramp was up, the guy stepped through plastic and fell through a hole.  That's this case.  That's the case.  It's not a complicated case.  It's a simple case."

With respect to the existence of more accurate, less burdensome methods of obtaining the same discovery, the United States' counsel noted: "Here they want to take a picture of an elevator that looks nothing like it did on the day of the accident. . . . .  The pictures that were produced in discovery with the containment up with everything as it was exactly the moment this accident happened.  That's the best evidence of how it looked and how it was configured and what visual cues the decedent had.  He's got the best evidence.  Taking a picture three [or] four years later [of a] completely open elevator . . . it's not how the elevator looked on the day of the accident.  It's not the same elevator."

Finally, in response to the Court's inquiry, the United States represented, that it is willing to stipulate (without conceding liability or negligence) that had the subject aft ramp been in the lowered position, it would have covered the gap through which the decedent fell.  Counsel later added that had the ramp been down, a gap big enough for a human to fall through would not have existed.  When asked by the Court whether the lowered ramp would have prevented the decedent's fall, the United States' counsel stated "yes, there would have been no gap for him to fall through."

## II.   SUPPLEMENTAL LEGAL STANDARD

As an in initial matter, contrary to Plaintiff's strenuous assertion, there is no "absolute right" to any particular piece of discovery.  All discovery is subject to the limitations set forth in Federal Rule of Civil Procedure 26(b)(2)(C) which states: "[T]he court must limit the frequency or extent of discovery otherwise allowed by these rules . . . if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive."  Rule 26(b)(1) provides for a proportionality analysis when discovery is being sought or opposed.  Rule 26(c) provides that courts may issue protective orders when the moving party has shown "good cause" and the order is necessary to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  And Rule 26(c)(1)(A) allows the Court to prohibit disputed discovery altogether.  In the context of inspections, district courts in this Circuit have applied a balancing test to determine whether discovery should be ordered given the utility of the discovery in "the search for the truth *balanced* against the burdens and dangers created by" it.  *Belcher v. Bassett Furniture Indus., Inc.*, 588 F.2d 904, 908 (4th Cir. 1978) (emphasis added); *see e.g.*, *Fratus v. County of Contra Costa*, 2015 U.S. Dist. LEXIS 97751, at *9-10 (N.D. Cal. July 27, 2015); *Osborne v. Billings Clinic*, 2015 U.S. Dist. LEXIS 38716, at *12-13 (D. Mont. Mar. 25, 2015); *Voggenthaler v. Md. Square, LLC*, 2011 U.S. Dist. LEXIS 5046, at *36-37, *49-50 (D. Nev. Jan. 13, 2011).

## III.   DISCUSSION

With respect to Plaintiff's new argument for the second inspection, she now contends she needs the inspection to view and measure the aft ramp and determine how much of the gap the ramp would have covered had it been lowered the day the decedent fell.  She wants to determine and reconstruct how this accident happened.  However, the *how* of this case is rather quite simple.  The decedent fell to his death when he stepped into an uncovered gap.  The United States acknowledges that he died because he fell through the gap.  The United States further acknowledges that the gap was not covered at the time

of the fall and that the decedent would not have fallen had the gap been covered.  So the manner and reason for this death is not in dispute.  The real question is *why:  Why* was the aft ramp in the raised position, *why* wasn't the gap covered, or *why* weren't other safety mechanisms employed to prevent the accident.   A second inspection, or multiple inspections of the ship, will not answer those essential questions.

Moreover—and importantly—the United States is also willing to stipulate (without conceding liability or negligence) that had the aft ramp been in its lowered position, it would have *completely* covered the gap, and the decedent would not have fallen. While Plaintiff's counsel argues that "*there's no way [he] can* [determine if the accident would have been prevented if the aft ramp was lowered] *without looking at it and photographing it and measuring it myself*," he dismisses the discovery he already has received and ignores the concession that the United States is prepared to make.[5]  The United States' willingness to so stipulate, which Plaintiff contends is her purpose for the second inspection, provides a far less burdensome and expensive—and far more efficient and convenient—alternative to ordering a second inspection.   Moreover, given that the United States is willing to stipulate, Plaintiff's task in convincing the Court that a second inspection is proportional to the needs of the case has actually increased now.

Balance and proportionality.   At bottom, the Court's task in resolving this discovery dispute is striking a balance and weighing the need for the requested inspection against the needs of the case and the burden compelling it will create.   In its first Order, the Court

---

[5] With respect to the size, dimensions, or shape of the ramp, there may be *some* utility gained from viewing and photographing the ramp to ascertain these details, but any such utility would be minimal given the discovery provided and especially in light of United States' potential stipulation.  The Court weighs that minimal utility against the burden the Court previously determined would inure to the United States.  Moreover, over four months remain in fact discovery.  If the discovery already provided does not answer Plaintiff's questions about the size and shape of the ramp, then she can simply request this information in formal discovery ("What is the size, dimensions, and shape of the aft ramp?"), a far less burdensome and costly alternative to an actual second physical inspection.

15-CV-180-JAH(WVG)

endeavored to engage in this inexact science and concluded that *on balance*, Plaintiff's interests in, and stated reasons for needing a second vessel inspection, were less than the burden it would create on the United States' side of the ledger.  This was particularly true given that far less burdensome and costly alternatives existed to provide the same ultimate result.  The balancing test may have been close, but the United States won the day in the end in part because the photographs taken minutes after the accident accurately depicted the scene exactly as it was then.  The photographs, coupled with the detailed technical diagrams, should provide Plaintiff with the information she seeks.  Now, Plaintiff's new argument is actually much less convincing than her prior arguments, especially given that the United States' stipulation vitiates the purported purpose of a second inspection.

Rule 26(b)(1), which addresses proportionality, is instructive here.  That rule allows parties to obtain non-privileged and relevant discovery provided it is proportional to the needs of the case considering various enumerated factors.  Those factors include the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Nothing in Rule 26(b)(1) indicates that any one factor is more or less important than another.

First, there is no question that the issues in this case are important.  A man died on a U.S. warship.  It's important that this case determine where responsibility lies for that death but also to learn lessons to prevent similar accidents from occurring in the future.  Second, the amount in controversy, while substantial, is just one factor to be considered and weighed against the other factors.  Fed. R. Civ. P. 26(b)(1) Advisory Committee Note to 2015 Amendment.  Third, there is also very little dispute that Defendant United States possesses much of the relevant discovery and there is an imbalance or "information asymmetry."  Plaintiff necessarily must rely to a great extent on the information provided to her from the United States (and Defendant NASCO).  However, Plaintiff has been provided substantial discovery and has over four more months to obtain other relevant

discovery.  Fourth, Plaintiff makes much of the fact that the United States has near-limitless resources and that it would not in any way be burdensome for the United States to accommodate her request for a second inspection.  Because this argument was previously made by Plaintiff and effectively countered by Defendant, the Court will not again address it except to say that "consideration of the parties' resources does not foreclose discovery requests addressed to an impecunious party, *nor justify unlimited discovery requests addressed to a wealthy party*."[6]  *Id.* (emphasis added).  Fifth, when determining the likelihood that the inspection would resolve the issues of this case, when a party is willing to stipulate to the very fact that the opposing party contends it seeks to discover, a dispute about that fact simply does not exist, and there is no issue to be resolved.  The Court considers discovery about facts over which there is no dispute—or to which the parties may stipulate—inherently disproportionate notwithstanding the aforementioned factors.  Given the discovery provided and the United States' willingness to stipulate to the facts Plaintiff now seeks to discover, the importance of a second inspection is minimal if not completely unnecessary and is outweighed by the burden to the United States.

Although there are conflicting views on which party has the burden of proving proportionality, *see Gilead Scis., Inc. v. Merck & Co*., 2016 U.S. Dist. LEXIS 5616, *4-5 (N.D. Cal. Jan. 13, 2016) (commenting that the party seeking discovery bears the burden), this Court believes the better approach is that both parties share the responsibility of

---

[6] Rule 26(c)(1)(B) also authorizes the Court to determine the "allocation of expenses" for the discovery it compels.  Notwithstanding the Court's findings in this, its second Order, given the importance Plaintiff's counsel attached to a second inspection, the Court inquired whether Plaintiff would be willing to bear the costs.  Without so much as a pause to even consider the question or the potential cost, Plaintiff's counsel summarily rejected the notion, noting as a taxpayer, he is already paying for it.  If a second inspection is as absolutely essential to Plaintiff as she claims, and given the stakes of the case, then the Court's cost shifting inquiry deserved more than an off-hand comment in reply.  In any event, even if a second inspection was compelled at Plaintiff's expense, this would not address other aspects of the burden the United States would suffer, such as significant logistical and safety concerns.

explaining their positions regarding the proportionality factors.  *Accord In re Bard IVC Filters Prods. Liab. Litig.*, 317 F.R.D. 562, 564-65 (D. Ariz. 2016); *Anderson v. Cnty. of Contra Costa*, 2017 U.S. Dist. LEXIS 34161, at *5-6 (N.D. Cal. Mar. 9, 2017); *Lopez v. Sanchez*, 2017 U.S. Dist. LEXIS 32493, at *3-5 (C.D. Cal. Mar. 7, 2017).  In this instance, Plaintiff has fallen short of convincing the Court that the proportionality review favors her, while Defendant has demonstrated that a second inspection would serve little to no additional useful purpose and, as the Court found in its previous Order, would continue to be burdensome.  Thus, with respect to proportionality considerations, a second inspection would be disproportionate given the burdens it would create, its cost, the existence of far less burdensome and far less costly alternatives, and the United States' willingness to stipulate to facts.  While it is tragic that this case involves the death of a man just trying to earn a living for his family, that factor alone does not surpass all others in justifying Plaintiff's second request for an inspection.

During argument, Plaintiff's counsel forcefully questioned several times "what harm"[7] would be caused by letting him go on the vessel and view the aft ramp.  In asking this question, counsel misses the point of this process, the Court's inquiry, and indeed his own role and responsibility in this inquiry.  He doesn't acknowledge newly-revised Rule 26(b)(1)'s directive that "[t]he parties and the court have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes."  Fed. R. Civ. P. 26(b)(1) Advisory Committee Note to 2015 Amendment. Counsel simply isn't acknowledging that his request causes *any* burden and essentially refuses to engage in the proportionality analysis that all parties must engage in with the Court.  The Court is not required to indulge Plaintiff's every request, allow discovery on every conceivable issue that arises in the case, and fill every gap a party raises.  *See Liberty Int'l Underwriters Can. v. Scottsdale Ins. Co.*, 2017 U.S. Dist. LEXIS 25099 (D.N.J. Feb. 23, 2017.)  And the Court has the responsibility—in fact Rule 26 *commands* the Court—

---

[7] The Court previously set forth the harm a second inspection would cause in its first Order.

to "limit the frequency or extent of discovery otherwise allowed" by the Rules if "the discovery sought . . . *can be obtained from some other source that is more convenient, less burdensome, or less expensive . . . .*"  Fed. R. Civ. P. 26(b)(2)(C)(i) (stating the Court "must" limit discovery under certain circumstances and even allowing the Court to do so *sua sponte*) (emphasis added).  That directive is what the Court complies with here, where the alternate sources are more convenient, less burdensome, *and* less expensive and where the United States is willing to stipulate to the very fact that Plaintiff purports to uncover.

Were there an absolute right to certain discovery, as Plaintiff's counsel repeatedly stated, there would be no need for a balancing test and the Civil Procedure Rules would not give courts the authority to limit or outright prohibit discovery.  On balance, weighing the minimal utility to Plaintiff against the burden on the United States, the Court finds Plaintiff's new reason for wanting to view the elevator platform a second time is outweighed by the burden upon the United States and is not proportional to the needs of the case.  The Court finds that Plaintiff's request is disproportionate to the needs of the case given the quality of the discovery provided thus far[8] especially in light of the United States' willingness to stipulate to certain critical facts.  But even if the United States was not willing to stipulate, Plaintiff's request for another inspection would nonetheless still fail given the state of discovery.  This discovery, as alluded to already, at a minimum, consists of numerous photographs taken within minutes of the accident depicting the scene as it was at the time, numerous technical diagrams and schematics, several depositions of knowledgeable Naval personnel, and the completion of one inspection already by Plaintiff accompanied by four expert witnesses.  This discovery undoubtedly will be analyzed by Plaintiff's experts who will provide expert advice and opinions regarding how the accident happened.

---

[8] At a minimum, the United States has produced numerous photographs taken within minutes of the accident depicting the scene as it was at the time, numerous technical diagrams and schematics, several depositions of knowledgeable Naval personnel, and the completion of one inspection already by Plaintiff accompanied by four expert witnesses.

1    Accordingly, the undersigned confirms the prior findings and denial for a second

2  vessel inspection.

3  DATED:  March 21, 2017

4

5    _____

6    Hon. William V. Gallo
     United States Magistrate Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

15-CV-180-JAH(WVG)